# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ETHAN RIPPEY,** | : | **Civil No. 4:24-cv-1694** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MICHAEL GOURLEY, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## MEMORANDUM OPINION

### I.    Factual Background and Procedural History

The petitioner in this case, Ethan Rippey, is a convicted rapist. The background of Rippey's sexual assault was thoroughly described by the Pennsylvania Superior Court in its decisions affirming Rippey's conviction and denying his petition for post-conviction relief. As the Superior Court explained:

> On August 21, 2016, K.H. ("the victim") and [Rippey], both college students, were drinking at a college party in York when [Rippey] invited [the victim] and others over to his house. [Rippey] and the victim went alone to the house to play beer pong. They kissed a bit, and then toured the house, ending up in [Rippey]'s bedroom. They kissed some more and [Rippey] digitally penetrated the victim's vagina. When the penetration became rough, however, the victim asked him to stop. He did not stop, and she pushed him away. [Rippey] then grabbed her and forced his penis into her mouth. Although the victim pushed him away again, and continually said "no," [Rippey] pushed her onto his bed, strangled her, and anally and vaginally raped her. After [Rippey] climaxed, he called the victim a "dirty little slut" as she ran crying out of the house and back to the party. Her friends took her to the York

Hospital where a forensic nurse conducted a SAFE rape examination. One week later, the victim reported the incident to the college's campus security and eventually she reported it to the York City Police Department.

The Commonwealth charged [Rippey] with [rape by forcible compulsion, involuntary deviate sexual intercourse by forcible compulsion, sexual assault, and simple assault]. Prior to trial, [Rippey] filed a Motion *in limine*, requesting, among other things, that the court preclude the Commonwealth's sexual assault forensic expert from testifying that the victim's injuries were consistent with "non-consensual sex." The court granted the Motion, in part, and precluded the expert from using the phrase "consistent with non-consensual sex." The court noted, without objection from [Rippey], that the expert would be allowed to opine on whether the injuries were caused by force.

At [Rippey]'s three-day jury trial, the Commonwealth presented the testimony of the victim, the SAFE nurse examiner, and the sexual assault forensic expert, among others. The victim testified regarding the evening of the rape and her extensive physical and psychological injuries. On cross examination, she testified that she had had one prior incident with [Rippey] in the spring of 2016 where all she remembered was drinking and playing video games with [Rippey] and two others before waking up bent over [Rippey]'s bed with [Rippey] standing behind her pulling up his pants, and her crying because she did not know what had occurred. She also recalled that she was bleeding anally later that evening.

The nurse examiner testified regarding the extensive injuries to the victim's body, stating that of 270 SAFE rape examinations she had conducted, the examination of the victim revealed the most injuries she had ever had to document. She stated that the victim had numerous lacerations, abrasions, and bruises in her vagina and anus, including a large laceration in the victim's anus "caused by blunt force trauma." The nurse also testified that she was unable to conduct a full internal examination because the victim was in too much pain.

The sexual assault expert testified that she reviewed the victim's medical chart and opined that the lacerations the victim received on

August 21, 2016, resulted from "blunt force trauma," and were "consistent with force."

[Rippey] testified that the August 2016 encounter was consensual rough sex, and stated "it takes two to tango." When counsel acknowledged that [Rippey] had been in the courtroom throughout all of the testimony presented by the Commonwealth, [Rippey] responded, "Yeah. I've missed a lot of class because of it."

The jury convicted [Rippey] of the above charges. The court ordered a presentence investigation ("PSI"), and the Sexual Offenders Assessment Board ("SOAB") evaluated [Rippey]. The court held [Rippey]'s sentencing hearing on February 20, 2019. The Commonwealth presented a statement from the victim and her aunt. A few of [Rippey]'s friends and family members presented statements, and the court acknowledged that [Rippey] had provided many letters of support from other friends and family members. The sentencing court noted its review of, *inter alia,* the PSI report, the SVP report, the victim's impact statement, and the many letters written on behalf of [Rippey]. The court also noted [Rippey]'s prior record score of zero before it imposed a sentence of 7 ½ to 15 years' incarceration on the rape by forcible compulsion conviction, a consecutive term of 9 ½ to 19 years' incarceration on the IDSI by forcible compulsion conviction, and a concurrent term of 3 to 6 months' incarceration for the simple assault conviction, for an aggregate of 17 to 34 years' incarceration.

Commonwealth v. Rippey, 290 A.3d 693, 2022 WL 17812858 *1-*2 (Pa. Super. Ct. 2022).

Following his conviction Rippey followed an occasionally desultory and somewhat erratic course of post-conviction litigation. This post-conviction litigation began when Rippey filed a motion to set aside and vacate his conviction which was denied by the trial court on March 4, 2019.

3

Rippey then filed a direct appeal with the Pennsylvania Superior Court challenging this conviction. On March 20, 2020, the Pennsylvania Superior Court denied this direct appeal, and affirmed Rippey's conviction and sentence. In doing so the Court observed that based upon the forensic evidence the trial judge properly "found there to be unusual cruelty in this case." Commonwealth v. Rippey, No. 627 MDA 2019, 2020 WL 1426658, at *5 (Pa. Super. Ct. Mar. 20, 2020).

Having exhausted his direct appeal, Rippey allowed more than seven months to pass before filing a Petition for Post-Conviction Relief in the Court of Common Pleas under Pennsylvania Post-Conviction Relief Act (PCRA) seeking a new trial on December 3, 2020. The Trial Court denied this petition on September 13, 2021 and Rippey appealed this adverse decision to the Pennsylvania Superior Court. In this PCRA appeal Rippey challenged the effectiveness of his counsel on four separate grounds, none of which are pursued by the petitioner in the instant federal habeas corpus petition.[1] The Superior Court rejected Rippey's claims of ineffective

---

[1] In this petition Rippey alleges that trial counsel was ineffective in failing to call an expert witness who may have been able to testify that the victim's failure to take prescribed medications near the date of this assault could have potentially affected her ability to accurately recall and relate events. (Doc. 1). Notably, it appears that this proffered testimony did not actually exist at the time of Rippey's trial in 2019. Rather, this proffer is first contained in a July 30, 2024 letter. (Id., Ex. A). In contrast, in his PCRA petition appeal, Rippey raised the following, unrelated, claims of ineffective assistance of counsel: First, Rippey claimed that trial counsel was aware that there were numerous people who were willing to testify to Appellant's good reputation in the community but failed to call these witnesses. Second, Rippey

4

assistance of counsel and affirmed the denial of this PCRA petition on December 19, 2022. Rippey then filed a Petition for Reargument with the Pennsylvania Superior Court on January 3, 2023, which was denied on February 28, 2023. Following the denial of this rehearing petition, Rippey filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on March 30, 2023, which was denied on October 16, 2023. Commonwealth v. Rippey, 305 A.3d 959 (Pa. 2023).

Nearly one year then elapsed until Rippey filed this federal habeas corpus petition on October 3, 2024. (Doc. 1). In this petition Rippey advances a single, previously unlitigated claim of ineffective assistance of counsel, arguing that that trial counsel was ineffective in failing to call an expert witness who may have been able to testify that the victim's failure to take prescribed medications near the date of this assault could have potentially affected her ability to accurately recall and relate events. (Id.)

---

asserted that trial counsel failed to object when the Commonwealth's sexual assault forensic expert testified that the victim's injuries occurred "by force." Third, Rippey claimed that trial counsel should have objected to the nurse examiner's testimony that the victim's injuries were the most that she had ever seen. Finally, Rippey contended that trial counsel's failure to challenge Appellant's SORNA registration requirement was unreasonable. Commonwealth v. Rippey, 2022 WL 17812858 at *3. On appeal, the Superior Court rejected all of these claims of ineffective assistance of counsel and Rippey does not reprise these allegations in his federal habeas corpus petition.

With Rippey's claims framed in this fashion, the Commonwealth has responded to this petition arguing that the new allegations made Rippey's habeas corpus petition are time barred, procedurally defaulted, and without merit. (Doc. 6). This petition is fully briefed and is, therefore, ripe for resolution. Upon consideration, for the reasons discussed below, we conclude that this petition is untimely, and its claims are procedurally defaulted. Moreover, given the deferential standard of review that applies to habeas petitions like Rippey's, his latest challenge to the effectiveness of trial counsel fails on its merits. Therefore, we will deny his petition.

## II.    Discussion

### A.    State Prisoner Habeas Relief–The Legal Standard.

#### 1.    Substantive Standards

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

> (A) the applicant has exhausted the remedies available in the courts of the State;
>
> ..........
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy rigorous substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct that violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so

great as to be of a constitutional dimension. See <u>Priester v. Vaughan</u>, 382 F.3d 394, 401–02 (3d Cir. 2004).

### 2. <u>Deference Owed to State Courts</u>

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; <u>see</u> 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts." <u>See</u> 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. <u>See</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338–39 (2006); <u>see also</u> <u>Warren v. Kyler</u>, 422 F.3d 132, 139–40 (3d Cir. 2006); <u>Gattis v. Snyder</u>, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734–35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000). Accordingly, where a state court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).

Rico v. Leftridge–Byrd, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the

PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." Rolan, 445 F.3d at 681.

### 3. **Ineffective Assistance of Counsel Claims**

These general principles apply with particular force to habeas petitions that are grounded in claims of ineffective assistance of counsel. It is undisputed that the Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.

Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second Strickland prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." Id. This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice

arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce, 527 A.2d 973, 976–77 (Pa.1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of Strickland. Billinger v. Cameron, 2010 WL 2632286, at *4 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); see also Waddington

v. Sarausad, 555 U.S. 179, 190 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable") (internal citations and quotations omitted).

This additional hurdle is added to the petitioner's substantive burden under Strickland. As the Supreme Court has observed a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). This doubly deferential standard of review applies with particular force to strategic judgment like those thrust upon counsel in the instant case. In this regard, the Court has held that:

> "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id., at 688, 104 S. Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 689, 104 S. Ct. 2052. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id., at 690, 104 S. Ct. 2052.

Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009). The deference which is owed to these strategic choices by trial counsel is great.

Therefore, in evaluating the first prong of the Strickland test, courts "must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the
circumstances, the challenged action 'might be considered sound trial
strategy.'" Id. The presumption can be rebutted by showing "that the
conduct was not, in fact, part of a strategy or by showing that the
strategy employed was unsound."

Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009) (quoting Thomas v. Varner, 428

F.3d 491, 499-500 (3d Cir. 2005)) (footnote omitted).

### 4. **Procedural Benchmarks – Statute of Limitations**

Furthermore, state prisoners seeking relief under Section 2254 must also

satisfy specific, and precise, procedural standards. Among these procedural

prerequisites is a requirement that petitioners timely file motions seeking habeas

corpus relief. The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2244, established a one-year statute of limitations on the

filing of habeas petitions by state prisoners.

In pertinent part, § 2244(d)(1) provides as follows:

A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a
State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of
direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created
by State action in violation of the Constitution or laws of the United
States is removed, if the applicant was prevented from filing by such
State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d), prescribes several forms of statutory tolling. First, with respect to tolling based upon a petitioner's direct appeal of his conviction: "The limitation period shall run from the latest of- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The courts have construed this tolling provision in a forgiving fashion, and in a manner that enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. Thus, with respect to direct appeals, the statute of limitations is tolled during the period in which a petitioner could have sought discretionary appellate court review, by way of allocator, even if no such petition is filed. Jimenez v. Quarterman, 555 U.S. 113, 119, 129 S. Ct. 681, 685, 172 L. Ed. 2d 475 (2009). After this period of

time passes, however, by statute the judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1)(A).

28 U.S.C. § 2244(d)(2), in turn, prescribes a second period of statutory tolling requirements while state prisoners seek collateral review of these convictions in state court, and provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004). Moreover, in contrast to the direct appeal tolling provisions, this post-conviction petition tolling provision does not allow for an additional period of tolling for the petitioner who

does not seek further discretionary appellate court review of his conviction and sentence. Miller v. Dragovich, 311 F.3d 574, 578 (3d Cir. 2002).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions, Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. Id. at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed:

> [E]quitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair." Generally, this will occur when the petitioner has "in some extraordinary way ... been prevented from asserting his or her rights" The petitioner must show that he or she "exercised reasonable diligence in investigating and bringing [the] claims." Mere excusable neglect is not sufficient.

Id. at 618-19 (citations omitted). Indeed, there are only three recognized instances in which equitable tolling is permitted: (1) if the petitioner was actively misled; (2) if the petitioner has been prevented from asserting his rights in some extraordinary way; or (3) if the petitioner timely asserted his rights but asserted them in the wrong forum. Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

Applying this exacting standard, courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been

found to rise to the 'extraordinary' circumstances required for equitable tolling." Id. (citing Freeman v. Page, 208 F.3d 572 (7th Cir. 2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir. 1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)).

### 5. **Procedural Benchmarks – Exhaustion and Procedural Default**

#### a. **Exhaustion of State Remedies**

State prisoners seeking relief under section 2254 must also satisfy additional specific, procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). The Supreme Court has explained that "a rigorously enforced total exhaustion rule" is necessary in our dual system of

government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid a federal court in its review of § 2254 petitions. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in obtaining state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

Although this exhaustion requirement compels petitioners to have previously given the state courts a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his

federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional clams. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligation by fairly presenting a claim to state courts, even if the state courts decline to address that claim. Dye v. Hofbauer, 546 U.S. 1 (2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

### b. **Procedural Default**

A necessary corollary of this exhaustion requirement is the procedural default doctrine, which applies in habeas corpus cases. Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim. In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted . . . .

> If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play. A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. Federal courts may not consider the merits of a procedurally defaulted claim

unless the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural ground.'" Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004) (citations omitted). Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined. Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000) (citations omitted). Similarly, when examining the second component of this "cause and prejudice" exception to the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at … trial created the possibility of

21

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

Likewise, the "miscarriage of justice" exception to this procedural bar rule is also narrowly tailored and requires a credible assertion of actual innocence to justify a petitioner's failure to comply with state procedural rules. Hubbard, 378 F.3d at 338.

Procedural bar claims typically arise in one of two factual contexts. First, in many instances, the procedural bar doctrine is asserted because an express state court ruling in prior litigation denying consideration of a habeas petitioner's state claims on some state procedural ground. In such a situation, courts have held that:

A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991). For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not

> the date the state court relied on it, <u>Doctor v. Walters</u>, 96 F.3d 675, 684
> (3d Cir. 1996), because a petitioner is entitled to notice of how to
> present a claim in state court.

<u>Taylor v. Horn</u>, 504 F.3d 416, 427-28 (3d Cir. 2007) (citing <u>Ford</u>, 498 U.S. at 423-24).

In other instances, the procedural default arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. <u>See, e.g.,</u> <u>Johnson v. Pinchak</u>, 392 F.3d 551 (3d Cir. 2004) (procedural default where petitioner failed to timely pursue state claim); <u>Hull v. Freeman</u>, 991 F.2d 86 (3d Cir. 1993) (same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice."

It is against these legal benchmarks that we assess Rippey's petition.

**B. <u>This Petition Should Be Denied.</u>**

In our view, as discussed below, Rippey's petition is untimely, procedurally flawed and devoid of substantive legal merit. Therefore, the petition will be denied.

1.  **This Petition is Time-Barred.**

At the outset, turning to the instant case, we conclude that Rippey's petition is plainly untimely, as it was filed outside of the AEDPA's one-year statute of limitations. As we have noted Rippey was convicted and sentenced in February of 2019. Following the denial of post-trial motions, Rippey took a direct appeal to the Pennsylvania Superior, which affirmed his conviction on March 20, 2020. Rippey sought no further direct review of his conviction. Accordingly, on April 20, 2020, his sentence became final for purposes of timeliness calculations under AEDPA.

More than seven months later, on December 3, 2020, Rippey filed a motion for Post Conviction Collateral Relief in the Court of Common Pleas. While this event tolled the federal habeas corpus limitations period, a total of approximately 258 days which were not subject to any form of statutory tolling had elapsed before Rippey filed this PCRA petition. After Rippey's PCRA petition was denied by the trial judge he appealed to the Pennsylvania Superior Court which affirmed the denial of post-conviction relief to the petitioner on December 19, 2022. When the Superior Court rejected Rippey's request for rehearing he filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court on March 30, 2023. That petition was denied on October 16, 2023 and the clock began to run anew on the one-year limitations period for filing a federal habeas corpus petition. Rippey then allowed nearly a year to pass without any action on his part before filing this petition on

24

October 3, 2024. As a result, approximately an additional 353 days which were not subject to any form of tolling elapsed. Combining these two time frames marked by complete inaction on Rippey's part, a total of approximately 611 days which are untolled passed before Rippey belatedly sought federal habeas corpus review.

A straightforward application of AEDPA's one-year statute of limitations to these immutable facts compels a finding that this petition is time-barred. Further, Rippey has not provided sufficient grounds for equitable tolling the limitations period otherwise prescribed by law. In this regard, it is incumbent upon the petitioner to establish both that he exercised reasonable diligence and that "the petitioner has '*in some extraordinary way* . . . been prevented from asserting his or her rights.'" Miller, 145 F.3d at 618-19 (citations omitted) (emphasis added).

In this case, rather than demonstrating reasonable diligence in pursuing these claims, Rippey's post-conviction litigation is marked by lengthy unexplained periods of indolence. Furthermore, Rippey has failed to show how he was prevented from asserting his rights in some extraordinary way. Therefore, no form of tolling analysis can save this petition from the fate which AEDPA's one-year statute of limitations dictates in this case. Thus, on its face this petition is untimely and falls outside § 2244(d)'s one-year limitation period, and we cannot find any extraordinary circumstances of the type which would justify equitable tolling of this limitations period.

Finally, while Rippey has made no showing of extraordinary circumstances on his part that would justify equitably tolling this limitations period, there are substantial equitable interests that weigh in favor of holding the petitioner strictly to the limitations period prescribed by law. These countervailing interests include the strong societal interests favoring finality in litigation, as well as the institutional interests of the criminal justice system, which favor prompt presentation and resolution of disputes. However, when considering a statute of limitations question that arises in the context of a belated collateral attack upon criminal convictions involving a brutal sexual assault, there is also an important human dimension to the statute of limitations. To ignore the limitations period prescribed by law and permit the petitioner to belatedly re-open this case would compel his victim to, once again, experience the trauma of these events. Since Rippey has not fulfilled his responsibility to bring this petition in a timely manner and has not carried his burden of showing extraordinary circumstances justifying a tolling of the statute of limitations, he should not be entitled to compel the government to require his victim to revisit these crimes and relive this sexual assault. Therefore, this petition should be dismissed as time barred.

## 2. **The Petitioner's Claims Are Procedurally Defaulted.**

Additionally, this petition is barred from federal habeas review because the sole, belated claim which Rippey advances was procedurally defaulted since it was

never fairly presented at the state court level. Neither the trial court, the Superior Court, nor the Pennsylvania Supreme Court were ever provided any opportunity to consider Rippey's allegation that trial counsel was ineffective in failing to call an expert witness who may have been able to testify that the victim's failure to take prescribed medications near the date of this assault could have potentially affected her ability to accurately recall and relate events. (Doc. 1). Further, we note that the wholly speculative nature of this claim is highlighted by the fact that this proffered testimony first came to light in July of 2024, some five years after Rippey's prosecution. Since this speculative claim has never ben submitted to the state courts for their consideration this latest claim advanced by Rippey is both unexhausted and procedurally defaulted.

Furthermore, any argument by the petitioner that this procedural default should be excused fails. As the Supreme Court has explained, "[w]here a defendant has procedurally defaulted a claim . . . the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998) *(*citing Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Smith v. Murray, 477 U.S. 527, 537 (1986)) (internal citations omitted). Such requests to excuse procedural defaults, while frequently made by defaulting petitioners, are rarely embraced by the courts.

As the Supreme Court has explained: "[a]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). However, this exception is also quite narrow. Id. ("We caution, however, that tenable actual-innocence gateway pleas are rare[.]").

In McQuiggin the Supreme Court relied on its prior decision in Schlup v. Delo, 513 U.S. 298 (1995), where the Court held that "a petitioner does not meet the threshold requirement [of showing actual innocence] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329; see also McQuiggin, 569 U.S. at 386; House v. Bell, 547 U.S. 518, 538 (2006) (emphasizing that the Schlup standard is "demanding" and rarely satisfied). The timing of the petition is also a relevant factor that bears on the reliability of the evidence that a petitioner offers to demonstrate actual innocence. McQuiggin, 133 S. Ct. at 1928. "To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Stated somewhat differently, the petitioner must "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." Id. at 316. Only when the

28

new evidence raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that trial was untainted by constitutional error," then the new evidence meets the "threshold showing of innocence [to] justify a review of the merits of the constitutional claims." Id. at 317.

In analyzing a petitioner's actual-innocence claim based on new evidence, "the habeas court must consider 'all the evidence,' old and new, incriminating, and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" House, 547 U.S. at 537-38. Accordingly, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." Id. At the same time, "it bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case." Id. at 538. Thus:

> In order to determine whether a habeas petitioner's claim of actual innocence may act as a procedural gateway under Schlup, a federal court must consider the following: "[1] whether [the petitioner] has presented 'new reliable evidence ... [that was] not presented at trial,' and, if so, [2] whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). For purposes of satisfying the first inquiry, "evidence is only new if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010) (quoting Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997)). See also Hubbard, 378 F.3d at 340 ("A defendant's own late-proffered testimony is not 'new' because it was available at trial. [The defendant]

merely chose not to present it to the jury. That choice does not open the gateway."). Once the court determines that a habeas petitioner has presented new reliable evidence, the court must then "assess the likely impact of [that] evidence on reasonable jurors." House, 547 U.S. at 538.

Pirela v. District Attorney of Phila., Civ. A. No. 00-5331, 2014 U.S. Dist. LEXIS 67947, *18-19, 2014 WL 2011536, *6 (E.D. Pa. May 16, 2014).

In our view, the *post hoc* proffer provided by Rippey plainly fails to meet these exacting legal benchmarks. That proffer is tendered years after the fact by a physician who never treated or examined the victim. Moreover, this belated proffer suggesting that the victim's recollection could have been impaired would have been merely cumulative since at trial Rippey's counsel explored these issues in the cross examination of the victim. Further, the proffered evidence is completely speculative since it indicates only that the victim's failure to comply with her medication regime "could have" caused her to "misperceive" that she was being raped. (Doc. 1, Ex. A at 4). Finally, this highly speculative opinion is entirely undermined by the actual forensic evidence at trial, which revealed that Rippey's victim suffered severe blunt force physical trauma as a result of this assault. This level of trauma graphically corroborated the veracity of the victim's testimony, was utterly inconsistent with Rippey's claim of consensual sex, and was powerful independent proof that Rippey committed a brutal sexual assault which the trial court found displayed "unusual

cruelty". <u>Commonwealth v. Rippey</u>, No. 627 MDA 2019, 2020 WL 1426658, at *5 (Pa. Super. Ct. Mar. 20, 2020).

Simply put, Rippey cannot avail himself of any actual innocence exception to AEDPA's exhaustion and procedural default requirements since he has not shown that this newly advanced speculative proffer of proof in any way alters the compelling quantum of proof establishing his guilt. Therefore, this unexhausted and defaulted claim fails as a matter of law and must be dismissed.[2]

### 3.  <u>**The Petitioner's Ineffective Assistance of Counsel Claims Are Meritless**</u>.

Not only do we find Rippey's claims to be time-barred and procedurally defaulted, but his latest, belated claim of ineffective assistance of counsel also fails

---

[2] To the extent that Rippey tries to save this claim by arguing that his state post-conviction counsel was also ineffective in not preserving it, we acknowledge the Supreme Court's holding in <u>Martinez</u> that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Martinez v. Ryan</u>, 566 U.S. 1, 17 (2012). However, to invoke this narrow exception to excuse a procedural default, "a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is 'substantial,' meaning that it has 'some merit,' and that petitioner had 'no counsel' or 'ineffective' counsel during the initial phase of the state collateral review proceeding." <u>Melecio v. Zaken</u>, No. CV 3:20-2068, 2023 WL 4138258, at *5 (M.D. Pa. June 22, 2023) (citing <u>Martinez</u>, 566 U.S. at 14, 17; <u>Glenn v. Wynder</u>, 743 F.3d 402, 410 (3d Cir. 2014)) (internal citations omitted). Here, as we have discussed, Rippey's belated, speculative proffer which is wholly contradicted by undisputed forensic fails to satisfy these two factors. Therefore, no exception to the procedural default applies here.

as a matter of substance. We employ a deferential standard in examining habeas petitions raising ineffective assistance of counsel. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

While Rippey's failure to present this ineffectiveness claim to the state courts at any juncture means that we lack the benefit of counsel's tactical thinking concerning the risks inherent in presenting this speculative proffered testimony, we find that Rippey failed to satisfy the second Strickland prong by showing that he was prejudiced by any alleged errors made by trial counsel or that they would have resulted in a different outcome at trial. On this score, under the second Strickland prong, a petitioner must demonstrate that he was prejudiced by counsel's errors. This prejudice requirement compels the petitioner to show that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome.

Rippey has made no such showing here, nor can he for a single simple reason. The undisputed forensic evidence in this case revealed that Rippey's victim suffered significant blunt force trauma as a result of this assault. That forensic proof was an immutable, irrefutable witness. It corroborated the victim's testimony, gave the lie to Rippey's claim of consensual sex, and provided independent proof of what the state courts found to be the unusual cruelty of this crime. Further, in the face of this forensic evidence implicating him in a brutal assault Rippey's own reported trial testimony was damning. At trial:

> [Rippey] testified that the August 2016 encounter was consensual rough sex, and stated "it takes two to tango." When counsel acknowledged that [Rippey] had been in the courtroom throughout all of the testimony presented by the Commonwealth, [Rippey] responded, "Yeah. I've missed a lot of class because of it."

Commonwealth v. Rippey, 2022 WL 17812858 at *2.

Rippey's apparent casual indifference to the severity of the victim's traumatic injuries and his implausible implication that these grave injuries were a product of a consensual encounter doubtless undermined any credibility the petitioner might have possessed in the eyes of the jury. Given this constellation of evidence, all of which plainly implicated Rippey, it cannot be said that there was reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Therefore, Rippey has not, and cannot, show the degree of prejudice

necessary for an ineffective assistance of counsel claim, and this petition fails on its merits.

In the final analysis, Rippey's conviction on these sexual assault charges is not the result of errors by his counsel, as he now belatedly claims. Rather, it is a product of the proof: the credible testimony of his victim; the irrefutable physical and forensic evidence which revealed a crime of "unusual cruelty"; and the narcissistic hubris which Rippey displayed before the jury at trial. These facts, and not the alleged errors of counsel, are what led to Rippey's conviction. Accordingly, this petition will be denied.

### 4. No Certificate of Appealability Will Issue

Nor should a certificate of appealability issue in this case. Under 28 U.S.C. § 2253(c)(2), a court may not issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." In other words, a certificate of appealability should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). In the instant case Rippey has made no such showing, nor can he. Rather, the petitioner's claims are time-barred, meritless and procedurally defaulted. Therefore, we will decline to issue a certificate of appealability.

## III.  __Conclusion__

Accordingly, for the foregoing reasons, we conclude that the Petition for Writ of Habeas Corpus should be DENIED and that a certificate of appealability should not issue. An appropriate order follows.

Submitted this  26th day of June 2025.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge